OPINION OF THE COURT
Dan Lamont, J.
Petitioner father brings this proceeding pursuant to Domestic Relations Law §§ 75-n and 75-p to enforce a custody order of the Chancery Court of Carroll County, Tennessee, made and entered December 9, 1987, granting petitioner father permanent custody of the parties’ minor child, Eric John C. (born *827 May 25, 1981). For the reasons which follow, this court holds and determines that such application should be granted consistent with the purposes and provisions of the Federal Parental Kidnaping Prevention Act (28 USC § 1738A; 42 USC §§ 653-655, 663) and the Uniform Child Custody Jurisdiction Act (Domestic Relations Law art 5-A).
FACTS
The parties’ child, Eric John C., was born on May 25, 1981. The parties were married in Carroll County, Tennessee, in November 1981. The parties and the child thereafter resided together in the State of Tennessee.
In June 1987, respondent mother left petitioner father and the marital residence and brought the child to reside near her immediate family in Cobleskill, New York. She immediately informed petitioner father as to the whereabouts of the child. Respondent alleges that she was the victim of pervasive, long-term physical and mental abuse by petitioner father. Respondent also alleges that petitioner father generally ignored the child, but would sometimes scream at the child and tell the child that petitioner was not his father. Petitioner father also allegedly failed to work and support respondent and the child. Respondent mother and the child presently receive public assistance in New York State.
In July 1987, petitioner father came to New York State and signed a written, acknowledged separation agreement prepared by respondent mother’s attorney. The separation agreement provides in applicable part as follows:
"article iv
"The parties hereto agree that the Wife, Carol C * * *, shall have the custody of the child, Eric C * * *. The Husband shall have reasonable rights of visitation. The Husband shall pay to the Wife a reasonable amount for the support and maintenance of said child which shall be in accordance with his ability. At the present time the Husband is not employed. He agrees to keep the Wife advised of his earnings and employment. He further agrees that he will start reasonable support payments for the child within the next 30 day period. * * *
"article ix
"In the event any Article of this Agreement shall be declared illegal, it shall not aifect in any way the remainder of said Agreement which shall remain in full force and effect.
"article x
"Each party agrees that the provisions of this Agreement *828 shall be submitted to any Court in which either party may seek a judgment or decree of divorce, separation, annulment or other termination of the marital relationship and the provisions of this Agreement shall be incorporated in such judgment or decree with such specificity as the Court shall deem permissible and by reference as may be appropriate under law and the rules of the Court. However, notwithstanding such incorporation, the obligations and covenants of this Agreement shall survive any decree or judgment of separation, divorce, annulment or other termination of the márital relationship and shall not merge therein, and this Agreement may be enforced independently of such decree of judgment.
"article xi
"This Agreement and all of the rights and obligations of the parties hereunder shall be construed according to the laws of the State of New York as an agreement made and to be performed within said State.”
In August 1987, respondent mother went to Tennessee to pick up her personal belongings. While in Tennessee, respondent mother was personally served on August 18, 1987 with process in petitioner father’s action for divorce — seeking an award of custody, and including a motion for a temporary injunction ordering respondent mother not to remove the child from Tennessee, or, in the alternative, to return the child to Tennessee. At the time, the child was still in New York State.
Upon returning to New York, respondent contacted a Tennessee attorney and requested that he appear on her behalf. The Tennessee attorney appeared for respondent in the Tennessee divorce action.
Petitioner father made a motion in Tennessee upon the original motion for a mandatory injunction directing respondent mother to return the child, and also made a motion to set aside and declare null and void the separation agreement signed by the parties dated July 22, 1987. Such motions were served upon the respondent mother’s attorney of record in Tennessee, and were made returnable on October 30, 1987. The respondent mother on public assistance alleges that it was financially impossible for her to return to Tennessee.
On October 30, 1987, the Chancery Court of Carroll County, Tennessee, made and entered an order which provides in applicable part as follows:
*829 "ordered, adjudged and decreed as follows:
"1. That temporary custody of the parties’ minor child, Eric John C * * *, pending final divorce proceedings is hereby vested in the plaintiff, Ricky D. C * * *, and mandatory injunction does issue against the defendant, Carol A. C * * *, to compel her to return said child to the plaintiff.
"2. That the Separation Agreement entered into by the parties in the State of New York and the County of Schoharie on the 22nd day of July, 1987 is hereby declared null and void and set aside and the same is to be for nothing held. The Agreement is null and void for the inability of the parties to waive jurisdictional requirements of divorce from the courts of the State of Tennessee.”
Thereafter, an order made and entered in the divorce action on December 9, 1987 by the Chancery Court of Carroll County, Tennessee, upon the default of respondent mother provides in applicable part as follows:
"ordered, adjudged and decreed as follows:
"1. Plaintiff, Ricky D. C * * *, is hereby granted an absolute divorce from the defendant, Carol A. C * * *, upon the grounds that defendant is guilty of such cruel and inhuman treatment as renders cohabitation unsafe and improper.
"2. The plaintiff is hereby granted the permanent custody of the parties’ minor child, Eric John C * * *, and defendant shall pay the sum of $200.00 per month as child support.” Petitioner father has not seen, written, or telephoned his son since July 18, 1987, nor has he ever sent the child a card or a present. Petitioner father has not supported the child, who remains on public assistance in New York State. The child is enrolled in school in New York. He is allegedly fearful of his father, and terrified at the prospect of being torn from his mother and returned to his father in Tennessee.
ISSUES presented
(1) Did the Chancery Court of Carroll County, Tennessee, assume jurisdiction substantially in accordance with the provisions of the .Parental Kidnaping Prevention Act and the Uniform Child Custody Jurisdiction Act?
(2) Does the written, acknowledged separation agreement signed by the parties in Schoharie County, New York, justify this court to decline to enforce the Tennessee custody order?
*830 THE LAW
The applicable statutes as to interstate enforcement of custody determinations are the Federal Parental Kidnaping Prevention Act (PKPA), and the Uniform Child Custody Jurisdiction Act (UCCJA) — which has been enacted by both New York (Domestic Relations Law art 5-A) and Tennessee (Tenn Code Annot § 36-6-201 et seq.). To the extent that the requirements and/or procedures of the PKPA and the UCCJA do not directly conflict with one another, or the application of the UCCJA would not be inconsistent with the purposes and policies of the Federal act, the two statutes should be read together in the- aggregate. However, under the Supremacy Clause of the US Constitution, the Federal act clearly preempts applicable State law in the event of a direct conflict.
The Federal Parental Kidnaping Prevention Act (28 USC § 1738A) provides in applicable part as follows:
"§ 1738A. Full faith and credit given to child custody determinations
"(a) The appropriate authorities of every State shall enforce according to its terms * * * any child custody determination made consistently with the provisions of this section by a court of another State.
"(b) As used in this section, the term * * *
"(3) 'custody determination’ means a judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications; * * *
"(e) Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child.” (Emphasis added.)
The New York Uniform Child Custody Jurisdiction Act (Domestic Relations Law art 5-A) provides in applicable part as follows:
"§ 75-n. Recognition of out-of-state custody decrees "The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this article or which was made under factual circumstances meeting the jurisdictional standards of this article”. (Emphasis added.)
*831 "§ 75-e. Notice and opportunity to be heard
"Before making a decree under this article, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child.” (Emphasis added.)
"§ 75-p. Filing and enforcement of custody decree of another state
"1. A certified copy of a custody decree of another state may be filed in the office of the clerk of the supreme court or of the family court. The clerk shall treat the decree in the same manner as a custody decree * * * rendered by a court of this state.”
CONCLUSIONS OF LAW
(1) The parties were married in the State of Tennessee, and resided together with the child in the State of Tennessee until June 1987. Petitioner father’s action for divorce seeking legal custody of the child was commenced on August 18, 1987 by personal service upon the respondent mother in the State of Tennessee.
Accordingly, Tennessee was clearly and unequivocally the child’s "home State” within the meaning and intent of both the PKPA and the UCCJA. The State of Tennessee clearly had jurisdiction in August 1987 to make a custody determination. Furthermore, respondent mother was afforded reasonable notice and an opportunity to be heard within the meaning and effect of both the PKPA and UCCJA. The fact that she thereafter defaulted in the Tennessee divorce action whether based upon her dire economic straits and/or the inaction of her Tennessee attorney can only be addressed by a Tennessee court.
Under the facts and circumstances presented, this court holds and determines that the State of Tennessee exercised jurisdiction substantially in accordance with the provisions of the PKPA and the UCCJA and that respondent mother was afforded fundamental due process of law — reasonable notice and an opportunity to be heard.
(2) At first blush, it would certainly seem that two consenting adults should be afforded the opportunity to enter into a written agreement containing provisions for custody of their own child.
*832 However, at the time such agreement was signed, the courts of Tennessee clearly possessed potential subject matter jurisdiction of the status of the parties’ marriage and the custody of their child.
When petitioner father commenced a divorce action seeking legal custody in the State of Tennessee by personally serving respondent mother in Tennessee on August 18, 1987, the Tennessee courts actually acquired subject matter jurisdiction relative to the dissolution of the marriage and the custody of the child of parties — who had resided together in Tennessee until June 1987.
Although it is far from apparent to this court why the Tennessee court would not recognize and sanction the portion of the separation agreement granting custody of the child to respondent mother, this court does acknowledge that the Tennessee court in' the exercise of "home State” custody jurisdiction could have certainly made a custody determination at variance with the parties’ written separation agreement — even if such agreement had been recognized as valid, but not binding on the Tennessee court.
In any event, respondent mother did not successfully sustain the separation agreement provision granting her legal custody of the child to the satisfaction of the Tennessee court, nor did she comply with any directives of the Tennessee court to return the child to Tennessee, nor did she appear in the Tennessee action and contest the custody of the child on the merits — or even allow the Tennessee courts to address the issue of custody in the context of the best interests of the child involved. She was afforded notice and an opportunity to be heard, and was found in default.
Accordingly, this court holds and determines that the written, acknowledged separation agreement signed by the parties in Schoharie County, New York, does not and cannot constitute grounds for this court to decline to enforce the Tennessee custody order.
CONCLUSION
Based upon the information presented, this court is convinced that the child’s return to Tennessee with his father may well be contrary to the child’s best interests. However, this court is also mindful of the serious and important purpose of the Parental Kidnaping Prevention Act and ,the Uniform Child Custody Jurisdiction Act to deter unilateral removals of
*833 children and to facilitate enforcement of custody decrees of sister States.
The courts of the State of Tennessee presumably and undeniably were and are ready, willing, and able to make a custody determination in the best interests of the child — an opportunity clearly not provided by respondent mother’s default. If the respondent mother believes that her default was excusable and/or the child’s best interests require that she be granted custody of the child, she must make her applications to and take her case and concerns to the only forum in these United States which in August 1987 had (and exercised) "home State” subject matter jurisdiction as to the issue, of the custody of this child.
For this court to decline to enforce the Tennessee order and to entertain the respondent mother’s custody petition and conduct a hearing concerning the child’s best interests would not only fly in the face of the express purposes and intent of the PKPA and the UCCJA, but would also constitute an ill-advised judicial attempt to do exactly what the PKPA and UCCJA are intended and designed to prevent and expressly forbid.
Accordingly, the petition to enforce the custody order of the Chancery Court of Carroll County, Tennessee, made and entered December 9, 1987 must be and the same hereby is granted.
Petitioner’s attorney to submit proposed order, to be settled upon notice to respondent’s attorney.